UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROLYN BOGAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   vs. | )   Case No. 4:04CV1503 JCH |
| | ) |
| GENERAL MOTORS CORPORATION, and | ) |
| NORTH AMERICAN SECURITY SOLUTIONS | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant General Motors' Motion for Summary Judgment, filed March 10, 2006. Carolyn Bogan was terminated from her employment at General Motors after she was accused of selling drugs at work. She brought suit against General Motors and North American Security Solutions, the company that General Motors had hired to investigate possible drug sales at the plant. The counts against General Motors allege negligent and intentional infliction of emotional distress, libel, and malicious prosecution. For the reasons discussed below, the Court grants General Motors' Motion for Summary Judgment.

**BACKGROUND**

Carolyn Bogan began working for General Motors ("GM") in 1985, most recently at the assembly plant in Wentzville, Missouri. (GM's Statement of Uncontroverted Material Facts, Doc. No. 19 ¶¶ 1-2). In 2000, GM hired North American Security Solutions ("NASS"), a private security

1

firm, to investigate alleged drug sales at the Wentzville plant. (Id. ¶ 5). NASS assigned its employee, Dwayne Harrell, to pose as a GM employee as part of the investigation. (Id. ¶ 6). In his reports to GM, Harrell alleged incidents in which Bogan, as well as several other employees, were observed selling or using drugs. (Id. ¶ 8). He also alleged that Bogan had sold him marijuana. (Id. ¶ 11). During the investigation, Bogan approached the plant manager and plant personnel director to discuss a comment she had overheard regarding her involvement in drug sales. Bogan denied any involvement and offered to take a drug test. (Id. ¶¶ 12-13).

Bogan asserts that, "in his recorded statement to union representatives Dwayne Harrell states that he smoked marijuana during working hours at General Motors; that he drank alcohol before, during and after work every day; that in most of the situations described in his written reports he was so drunk he doesn't remember what occurred; that he made sexual advances toward plaintiff; and that his written reports alleging drug sales were altered."[1] (Bogan's Statement of Disputed Material Facts, Doc. No. 27 ¶ 2). She also claims that Harrell says he was instructed by GM, NASS, and the police department specifically to target Plaintiff in his investigation. (Id. ¶ 3).

In August and September, 2002, Bogan was indicted, and then arrested on three counts of drug trafficking. (GM's Statement of Uncontroverted Material Facts, Doc. No. 19 ¶¶ 15-17). A few weeks later, GM terminated Bogan for "inappropriate behavior" (Id. ¶ 24), based on the allegation that she sold drugs to Harrell. (Id. ¶ 25).

On September 7, 2002, the St. Louis Post-Dispatch published an article entitled "Eight

---

[1] Although Bogan cites to her deposition transcript in support of this, there is no mention near the cited pages of any of these activities. Because the entire statement is hearsay, even if she did discuss it in her deposition, it could not be considered by the Court on the motion for summary judgment. Fed. R. Civ. P. 56(e).

No deposition testimony or affidavit from Harrell is contained in the record before the Court.

employees at GM plant in Wentzville are charged with selling marijuana at work." (Id. ¶ 29). Bogan was listed as one of the eight employees. (Article, Doc. No. 18, attached exh. B). In the article, a GM spokesman was quoted as saying that GM has "an absolute zero tolerance for this type of behavior." (GM's Statement of Uncontroverted Material Facts, Doc. No. 19 ¶ 30).

The criminal charges against Bogan were later dismissed.[2] (Id. ¶ 23). Bogan was rehired in May 2003 as part of the settlement for a grievance that she filed challenging her termination. (Id. ¶ 28). In July 2003, an unidentified employee at work told Bogan to "watch [her] back." (Id. ¶ 36). Bogan took a month-long medical leave of absence following this incident. (Id. ¶ 37).

Bogan filed her original petition in the Circuit Court for the City of St. Louis. (Petition, Doc. No. 1). Defendants removed to this Court on October 29, 2004, on the basis of diversity of citizenship[3] jurisdiction. (Notice of Removal, Doc. No. 1). GM filed its Motion for Summary Judgment on March 10, 2006.[4] (Doc. No. 18). The matter is now fully briefed and ready for disposition.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2] Of the other employees arrested for drug trafficking, two pled guilty, one pled no contest, and the charges were dismissed against the rest. (Id. ¶¶ 22-23).

[3] Defendants cite 28 U.S.C. § 1331 as the basis for removal. 28 U.S.C. § 1332 is the correct provision for diversity of citizenship jurisdiction. The parties do not dispute that diversity exists and that the amount in controversy exceeds $75,000.

[4] NASS did not move for summary judgment.

3

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

As a federal court sitting in diversity, this Court must apply the laws of the State of Missouri. Altru Health Sys. v. Am. Prot. Ins. Co., 238 F.3d 961, 962 (8th Cir. 2001). The Court looks first to decisions of the Missouri Supreme Court. Blum v. Allstate Ins. Co., 296 F. Supp.2d 1037, 1039 (E.D. Mo. 2003). If no relevant decisions are available, the Court will look to Missouri appellate court decisions. Id. The task is "to determine how the Missouri Supreme Court would decide the issue at hand." Id.

## **DISCUSSION**

Bogan asserts four counts against GM: intentional infliction of emotional distress, negligent infliction of emotional distress, libel, and malicious prosecution. GM moves for summary judgment on all four counts.

### A.     Negligent and Intentional Infliction of Emotional Distress

Bogan asserts claims for both negligent and intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that "(1) the defendant's conduct was extreme and outrageous; (2) the defendant acted in an intentional or reckless manner; and (3) the defendant's acts caused plaintiff severe emotional distress that resulted in bodily harm." St. Anthony's Medical Center v. H.S.H., 974 S.W.2d 606, 611 (Mo. Ct. App. 1998). "The conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. 1997) (internal quotations omitted). The plaintiff's emotional distress "must be medically diagnosable and must be of sufficient severity so as to be medically significant." Bass v. Nooney Co., 646 S.W.2d 765, 772 (Mo. 1983).

Similarly, to recover for negligent infliction of emotional distress, the plaintiff must prove that "(1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress; and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." Bass, 646 S.W.2d at 772-73.

GM argues that its motion for summary judgment on the counts for negligent and intentional infliction of emotional distress should be granted for three reasons. First, the conduct was not

outrageous or negligent. Second, there is no proof that Bogan's emotional distress was medically diagnosable. And third, both counts are preempted by federal labor law.

1. Outrageousness of Conduct

GM first asserts that Bogan cannot prove that GM's conduct was outrageous, or negligent, as a matter of law. GM argues that it did nothing more than investigate credible claims of misconduct. Alternately, it asserts that even if Harrell's allegations against Bogan were false, "nothing in the record supports the conclusion that GM doubted the veracity of the operative's written reports on which it based its disciplinary decisions, nor does the evidence suggest that GM acted negligently by relying on them, as the reports prepared by the operative contained no indication that they were false." (GM's Memorandum in Support of Motion for Summary Judgment, Doc. No. 20, at 3).

Bogan's response centers on whether Harrell was an employee or agent of GM. If he were an employee or agent of GM, then his actions might be attributable to GM under the doctrine of respondeat superior. Bogan must establish two elements to prove "an agency relationship: (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf, and (2) the agent must be subject to the principal's control." Wray v. Cmty. Health Ctr., 901 S.W.2d 167, 170 (Mo. Ct. App. 1995). Bogan asserts that there is a genuine issue of material fact as to whether Harrell was an employee of GM, or, in the alternative, that there is no dispute that Harrell was acting as an agent of GM.

Bogan states that Harrell was a GM employee.[5] (Bogan Deposition II, Doc. No. 18. attached

---

[5] Bogan does not provide an affidavit or deposition testimony from Harrell. In her Statement of Undisputed Material Facts she states that Harrell told both her and union representatives that he was a GM employee. But to support this assertion, she cites to the deposition, in which she states

6

exh. B at 12). This statement, however, is not made on personal knowledge and thus cannot be considered on a motion for summary judgment. Fed. R. Civ. P. 56(e). GM provides the Court with the affidavit of Nick Chiros, who worked with NASS, on behalf of GM, on the investigation. (Chiros Affidavit, Doc. No. 18, attached exh. D ¶ 2). Chiros states, on personal knowledge, that Harrell posed as an employee of GM, but "was never an employee of GM." (Id. ¶ 3). Chiros was not a GM employee, he was employed by Securitas, a vendor for GM. (Id. ¶ 1). While he "had primary responsibility on behalf of GM for working with [NASS]," (Id. ¶ 2), it is not apparent from his affidavit how this provided him with knowledge of whether Harrell was a GM employee. Further, his statement that Harrell "was never an employee of GM" is a legal conclusion, with no supporting facts. (See Id. ¶ 3). Because there is no competent evidence[6] in the record as to whether Harrell was employed by GM, there is an issue of fact regarding Harrell's status as a GM employee.

Bogan next asserts that there is no dispute that Harrell was acting as GM's agent when the alleged acts occurred. In support of this, she points to the statements in two affidavits, one from Chiros, and one from a representative of GM, that GM reviewed Harrell's daily logs and found nothing suggesting that his reports of drug activity were false. (Chiros and Eastvold Affidavits, Doc. No. 18, attached exhs. D, E). Harrell could be GM's agent if GM's review of his daily logs constitutes consent to Harrell acting on GM's behalf, and if it shows that Harrell was subject to GM's control. Whether or not reviewing Harrell's daily logs and reports is sufficient to constitute an

---

that Harrell was a GM employee, but makes no mention of union representatives. (Statement of Undisputed Material Facts, Doc. No. 27 ¶ 1; Bogan Deposition II, Doc. No. 18. attached exh. B at 12).

[6] An example of this would be an affidavit from a representative of GM's human resources department stating that Harrell received no paychecks or benefits from GM.

7

agency relationship between Harrell and GM is an issue of material fact.[7]

2. Medically Diagnosable Injury

GM next argues that summary judgment should be granted in its favor because Bogan has not identified an expert witness to establish that her emotional distress was medically diagnosable. Missouri courts have held that for a plaintiff "to recover for emotional distress where no physical injury is involved, there must be proof by expert medical testimony that the emotional distress or mental injury was medically diagnosed and of sufficient severity as to be medically significant."[8] Van Eaton v. Thon, 764 S.W.2d 674, 676 (Mo. Ct. App. 1988) (citing Bass, 646 S.W.2d at 772-773) (internal quotations omitted).

The issue of Bogan's expert medical testimony has a complex history. Soon after GM filed its motion for summary judgment, based in part on the failure of Bogan to identify an expert witness, Bogan moved the Court to allow her to disclose an expert witness out of time. The Court granted

---

[7] GM further argues that if Harrell were its agent, since his alleged actions are "so utterly inappropriate as to be 'outrageous and criminal,'" then GM is not vicariously liable for them. See Brown v. Associated Dry Goods, Inc., 656 F.2d 306, 307 (8th Cir. 1981). Because most of Harrell's allegedly outrageous and criminal activities are in the record in the form of hearsay evidence, the Court cannot address this argument at this time.

[8] The Court is aware of dicta in a recent Missouri Supreme Court case, stating that for "the tort of intentional infliction of emotional distress, . . . medically documented damages need not be proven." State ex rel. Dean v. Cunningham, 182 S.W.3d 561, 566 n.4 (Mo. 2006). This statement, however, cites to case law regarding the availability of emotional distress damages for other intentional torts, not the tort of intentional infliction of emotional distress. The statement is also part of the court's criticism of an Eighth Circuit case. That case required expert medical testimony to support emotional distress damages for a violation of the Missouri Human Rights Act, not only when the plaintiff claimed the separate tort of intentional infliction of emotional distress. Extensive case law supports the distinction between emotional damages for intentional torts and recovery for the tort of intentional infliction of emotional distress. See Woods v. Wills, 400 F. Supp. 2d 1145, 1167-69 (E.D. Mo. 2005); Poehl v. Randolph, 2006 WL 1236838 (E.D. Mo. 2006).

her motion, and both Defendants promptly filed motions to reconsider. (Doc. Nos. 24, 25). They argued that she was six months late in disclosing her expert witness, that GM had partially based its motion for summary judgment on Bogan's lack of an expert, and that since discovery was already closed they would have no opportunity to depose the expert or to have his report examined by another expert. Bogan did not respond to the motions to reconsider, and the Court granted them.

After the Court granted the motions to reconsider, thus denying Bogan's request to disclose her expert witness out of time, Bogan filed a motion to reconsider that decision. (Doc. No. 30). She argued that she had retained her expert in time, but that she was unable to get in touch with the expert for four months, delaying her receipt of the expert's report. The Court denied her motion to reconsider, so Bogan has no expert testimony regarding medically diagnosable emotional distress.

Bogan has also been examined by a Dr. Crane. It is unclear why Dr. Crane examined her. Bogan asserts that, in February 2006, GM ordered her to be examined by its expert, referring to Dr. Crane. (Doc. No. 23 ¶ 5). Bogan requests that she be allowed to use Dr. Crane as her own expert. (Motion to Reconsider, Doc. No. 30 at 2). GM denies that it ordered her to be examined by its expert, stating that, if it requested the examination, it was not for the purposes of this litigation. (Doc. No. 32, at 2). NASS also opposes this request, asserting that it would still need to depose Dr. Crane, and have his report examined. (Doc. No. 31, at 3). Allowing Bogan to use Dr. Crane as her expert would cause the same problem as allowing her to use her original expert. With both potential experts, at least one defendant would be unable to conduct any discovery regarding a significant issue in the case.

Because Bogan did not timely provide Defendants with her expert materials, she is "unable to offer the requisite medical evidence relevant to her distress." Collins v. Burg, 169 F.3d 563, 565

(8th Cir. 1999). The Court grants summary judgment in favor of GM on Bogan's claims of negligent and intentional infliction of emotional distress, Counts III and V.

### 3. Federal Labor Law Preemption

Although the Court has granted GM summary judgment on Bogan's claims of negligent and intentional infliction of emotional distress, it will still address GM's final argument, that these claims are preempted[9] by federal labor law, because their resolution requires an interpretation of the collective bargaining agreement ("CBA"). Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) governs suits "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." Id. Section 301 preempts state law tort claims when the Court must interpret the CBA in order to resolve the state law claims. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S. Ct. 1904, 1915 (1985). The Supreme Court has held that when a state law tort claim is "inextricably intertwined with consideration of the terms of the labor contract" it is preempted by § 301. Allis-Chalmers, 471 U.S. at 213. The CBA at GM specifies that the "right to hire; promote; discharge or discipline for cause; and to maintain discipline and efficiency of employees, is the sole responsibility of the Corporation...."[10] (CBA, Doc. No. 18, attached exh. C).

There are two lines of cases within the Eighth Circuit regarding § 301 preemption. One adheres to a broad preemption by § 301. Johnson v Anheuser Busch, Inc., 876 F.2d 620 (8th Cir.

---

[9] If Bogan's claims are preempted by § 301, then they are barred by the six-month statute of limitations. 29 U.S.C. § 160(b).

[10] The record does not include a complete copy of the CBA. Hence, the Court will only consider the available portion in its review. See Luecke v. Schnucks Markets, Inc., 85 F.3d 356 n.5 8th Cir. 1996).

1989). Johnson considers not only the allegations in the complaint, but also defenses. Id. at 623. In Johnson, the plaintiff had been accused of slashing tires in the company parking lot. Id. at 622. He was arrested and fired as a result. The charges were later dropped. Id. The Johnson court held that the plaintiff's claim for intentional infliction of emotional distress was preempted because it arose "out of his discharge and the appellee's conduct in the investigation." Id. at 624. The court further explained that to "determine the merits of this allegation would require us to decide whether his discharge was warranted under the terms of the collective bargaining agreement." Id.

The Eighth Circuit came to the same conclusion in a case that involved a claim for negligence. Gore v. Trans World Airlines, 210 F.3d 944 (8th Cir. 2000). The plaintiff in Gore was suspended after he was overheard saying that he planned to kill himself and other employees. Id. at 947. He was later reinstated with back pay after a psychologist and an employer hearing board found that he posed no danger. Id. at 948. The CBA in Gore specifically prohibited threats of violence against other employees, and imposed contractual obligations on the employer to protect the safety of its employees. Id. at 947-48. The plaintiff in Gore claimed that TWA was negligent in how it carried out the initial investigation that led to his suspension. Id. at 950-51. The Gore court examined each of the plaintiff's state law tort claims to determine whether the employer "acted contrary to [its] duties under the" CBA, and held that the negligence claim was preempted because "the duty allegedly breached is defined by the agreement that governs the employment relationship." Id. at 950-51.

A separate line of Eighth Circuit cases holds that § 301 preemption is narrow.[11] In Luecke

---

[11] These two lines are not necessarily in conflict. Luecke expressly distinguishes itself from the Johnson line: "Because the allegedly false accusations [in Johnson] resulted in the employee's discharge for violating specific misconduct rules, consideration of the collective-bargaining agreement was needed to ascertain whether the discharge was wrongful. Id. at 362.

Later cases, however, disavow Johnson's reasoning . See Meyer v. Schnucks Markets, Inc., 163 F.3d 1048, 1050 (8th Cir. 1998) ("We recognize that some of our cases do not seem to have

11

v. Schnucks Markets, Inc., 85 F.3d 356 (8th Cir. 1996), the employer incorrectly told the employee's wife that the employee had refused to take a drug test. Id. at 357-58. The employee was not disciplined or discharged. He then sued for defamation under state tort law. Id. The Eighth Circuit relied on a Supreme Court case in holding that the plaintiff's claims were not preempted. Id. at 359 (the Supreme Court "explained that the pertinent factual inquiry in the state retaliatory discharge action did not turn on any term of the agreement, but rather on the employee's conduct and the employer's conduct and motivation") (citing Lingle v. Norge Div., Magic Chef, 486 U.S. 399, 407, 108 S. Ct. 1877, 1882 (1988)). Also applying a factual inquiry, the Luecke court examined the elements of defamation, and explained that "[k]eeping in mind the central factual inquiry . . . we look to see whether an interpretation of the collective-bargaining agreement will be required in order to resolve the state claim. The answer . . . is 'no.'" Luecke, 85 F.3d at 359.

In another case, the Eighth Circuit held that a claim for intentional infliction of emotional distress was not preempted. Hanks v. General Motors Corp., 906 F.2d 341 (8th Cir. 1990). In Hanks, the employer assigned the plaintiff to work directly under a supervisor who had sexually assaulted the plaintiff's daughter. The plaintiff refused to come to work under those conditions, and the employer told her that she was considered to have quit voluntarily. Id. at 342. The court found her claim of intentional infliction of emotional distress was not preempted, as it involved "duties owed by GM to every member of society, not just to employees covered by the collective bargaining agreement." Id. at 344. The court further explained that to "determine the merits of any of Hanks' claims, neither the trier of fact nor the trier of law has to determine whether her discharge was

---

applied Lingle in an appropriately narrow way.").

12

warranted under the terms and provisions of the collective bargaining agreement." Id.

The Court finds the reasoning of the narrow preemption line of cases persuasive, particularly the Meyer court's criticism of Johnson. Meyer v. Schnucks Markets, Inc., 163 F.3d 1048 (8th Cir. 1998). The Johnson court stated that courts must look to defenses as well as allegations in determining preemption. Johnson, 876 F.2d at 623. Meyer disagreed, and found that the narrower approach was more in line with Supreme Court precedent, stating that the court should "only whether the claim itself is necessarily grounded in rights established by a CBA." Meyer, 163 F.3d at 1051.

Even under the narrow line of cases, however, Bogan's claim is still preempted. Meyer held that claims are not preempted if the defense, but not the claim itself, requires the interpretation of the CBA. Meyer, 163 F.3d at 1051. Here, it is the claim itself that requires interpretation of the CBA. Bogan challenges the manner in which GM carried out its investigation of misconduct in the workplace as well as her discharge from employment. Both of these activities are encompassed in the CBA provision providing GM with the "right to hire; promote; discharge or discipline for cause; and to maintain discipline and efficiency of employees...." (CBA, Doc. No. 18, attached exh. C). To evaluate her claim, the Court would need to interpret the CBA to determine if GM's actions were permissible under the CBA. Bogan's claims for intentional and negligent infliction of emotional distress are thus preempted by § 301.

**B.** **Libel**

GM next argues that Bogan cannot succeed in her claim for libel, as she failed to identify a publication in which GM made a false or defamatory statement regarding her. Bogan's libel claim is based on the St. Louis Post-Dispatch article that reported that she had been arrested for selling

drugs. (Petition. Doc. No. 1, at 9).

Under Missouri law, libel is "the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke that person to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse." Roberson v. Beeman, 790 S.W.2d 948, 950 (Mo. Ct. App. 1990). "The elements of defamation in Missouri are: 1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation."[12] Overcast v. Billings Mutual Ins. Co., 11 S.W.3d 62, 70 (Mo. 2000).

GM asserts that Bogan fails on two aspects of her libel claim.[13] First, GM argues that there is no evidence that GM caused the article to be published. The only statement in the article by anyone affiliated with GM is a GM spokesman who was quoted as saying that GM has "an absolute zero tolerance for this type of behavior." (GM's Statement of Uncontroverted Material Facts, Doc. No. 19 ¶ 30). Bogan submitted no additional information showing that GM was involved in the publication of the article.

Second, GM contends that the article was true. GM states that the alleged defamatory statement, that Bogan was arrested for selling drugs, is true, and that truth is a defense to libel. Mo. Rev. Stat. § 509.210; McClanahan v. Global Sec. Service, Co., Inc., 26 S.W.3d 291, 293 (Mo. Ct. App. 2000). Bogan does not dispute that she was arrested.

The Court finds that there is no genuine issue of material fact as to Bogan's claim of libel, and

---

[12] Libel is a form of defamation. Black's Law Dictionary 417 (6th ed. 1990).

[13] Bogan did not respond to GM's motion for summary judgment on her count for libel. The Court must still determine if there is an issue of material fact.

therefore grants GM's motion for summary judgment on Count VII.

**C.     Malicious Prosecution**

GM contends that Bogan cannot succeed in her claim for malicious prosecution because GM played no part in her arrest and because her indictment by the grand jury shows probable cause.

The elements of the tort of malicious prosecution are "(1) the commencement of a judicial proceeding against the plaintiff; (2) the instigation of the suit by the defendant; (3) the termination of the proceeding in plaintiff's favor; (4) the absence of probable cause for the suit; (5) malice by the defendant in instituting the suit; and (6) resulting damage to the plaintiff." Joseph H. Held & Assoc., Inc. v. Wolff, 39 S.W.3d 59 62-63 (Mo. Ct. App. 2001). "[P]laintiff's failure to prove any one of the elements results in the failure to make a submissible case of malicious prosecution." Simpson v. Indopco, Inc., 18 S.W.3d 470, 473 (Mo. Ct. App. 2000).

GM argues that Bogan cannot meet the second, fourth or fifth elements.[14]  First, GM asserts that Bogan has no evidence to show that GM instigated her prosecution. Her only evidence that GM instigated her prosecution is in the form of hearsay.  In her deposition, she said that a police officer told her that GM was responsible for what happened, and that the prosecuting attorney stated on television that GM "ran a sting without police cooperation."[15]  (GM's Statement of Uncontroverted Material Facts, Doc. No. 19 ¶¶ 18, 20).  In contrast, GM submits a sworn affidavit stating that "GM did not request that any employee be arrested or prosecuted."  (Chiros Affidavit, Doc. No. 18,

---

[14] Again, Bogan did not respond to GM's motion for summary judgment on the malicious prosecution count, but the Court must still determine if there is an issue of material fact.

[15] Bogan was unable to produce a video of the televised statement. (GM's Statement of Uncontroverted Material Facts, Doc. No. 19 ¶¶ 20. n.4).

attached exh. D ¶ 7).

GM next argues that Bogan cannot meet the fourth element; since the grand jury indictment creates a prima facie showing of probable cause. See Moad v. Pioneer Finance Co., 496 S.W.2d 794, 798 (Mo. 1973). "The prima facie showing of the presence of probable cause is conclusive unless rebutted by evidence that false testimony was the basis of the charge and that the falsity, if so, was discoverable upon reasonable investigation." Marcum v. Sagehorn, 660 S.W.2d 426, 429 (Mo. Ct. App. 1983) (internal quotations omitted). Bogan has offered no evidence to rebut the prima facie showing of probable cause.

GM also contends that Bogan cannot show that GM acted with legal malice. To prove legal malice, Bogan must prove that GM "acted primarily for a purpose other than that of bringing an offender to justice and acted without reasonable grounds." Sanders v. Daniel Intern. Corp., 682 S.W.2d 803, 814 n.4 (Mo. 1984). Bogan provides the Court with no evidence to show that GM acted with malice. GM puts forth a sworn affidavit that contradicts any possibility of malice. (Chiros Affidavit, Doc. No. 18, attached exh. D).

The Court finds there to be no issue of material fact on Bogan's claim of malicious prosecution, and grant summary judgment to GM on Count VIII.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant General Motors' Motion for Summary Judgment (Doc. No. 18) is hereby **GRANTED**.

An appropriate Judgment will accompany this Memorandum and Order.


Dated this 27th day of June, 2006.

                                            /s/ Jean C. Hamilton
                                            UNITED STATES DISTRICT JUDGE